# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Eugene Christopher Banks, | Civ. No. 08-5792 (MJD/JJK) |
| Plaintiff, | |
| v. | |
| Cal R. Ludeman, in their individual and official capacity; Dennis Benson, in their individual and official capacity; Nancy Johnston, in their individual and official capacity; Greg Carlson, in their individual and official capacity; Brian Ninneman, in their individual and official capacity; Thomas Lundquist, in their individual and official capacity; Allison Ecklund, in their individual and official capacity; | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Eugene Christopher Banks, 1111 Hwy 73, Moose Lake, MN 55767, *pro se.*

Barbara E. Berg Windels, Minnesota Attorney General's Office, counsel for Defendants.

United States Magistrate Judge Jeffrey J. Keyes

## INTRODUCTION

This matter is before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss (Doc. No. 5).  The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court recommends that the

motion to dismiss be denied.

## FACTUAL BACKGROUND

Since 1999, Plaintiff has been in civil commitment in a secure treatment facility because it has been determined by the State of Minnesota that he is a sexually dangerous person ("SDP")[1].  He is currently residing at the State's secure facility at Moose Lake, Minnesota.

In this § 1983 action, Plaintiff contends that the state has violated his constitutional rights because various magazines, books, pamphlets, and catalogs have been seized from him.  Specifically, he alleges that a non-party official seized the *Nation*, a political magazine, from him, tore out a page, and then returned the magazine.  (Doc. No. 1, ¶ 1.)  He alleges that another non-party official seized various pamphlets and other materials dealing with sex addiction and other topics.  (*Id.* ¶ 2.)  Further, he alleges that a non-party official seized a magazine entitled "*Oprah*" because the Minnesota Sex Offender Program's Media Review Team deemed it contraband due to alleged nudity.  (*Id.* ¶ 3.)  He asserts that various non-party officials seized magazines entitled *Spread* (*Id.* ¶¶ 10-11), and  *Pacific Island Ladies*, a singles magazine (*Id.* ¶ 12). Regarding the latter, Plaintiff asserts that Defendant Allison Ecklund deemed the magazine contraband and ordered that it be immediately destroyed.  (*Id.* ¶ 12.)  The Complaint also asserts that various photographic catalogs published by Christie's

---

[1]     *In re Banks*, No. C3-00-272, 2000 WL 1146740, at *3 (Minn. Ct. App. Aug.
(Footnote Continued on Following Page)

and Sotheby's auction houses were seized by non-party officials.  (*Id.* ¶¶ 6, 8-9, 14, 17.)

Plaintiff also alleges that Defendants were responsible for the unlawful seizure of various t-shirts he possessed.  He alleges that Defendant Brian Ninneman and other non-party officials seized a t-shirt, which displayed slogans they deemed "'Therapy interfering Behavior'" without providing disposition of the decision.  (*Id.* ¶ 5.)  He asserts that on another occasion Defendants Ninneman and Ecklund attempted to seize a t-shirt bearing a promotion of an anti-drug movie, and that when he refused to "waive his 1st Amendment right to free speech," he was "placed in 'protective isolation' on several occasions over a one-week period."  (*Id.* ¶ 15, 16.)

Plaintiff also alleges that DVDs entitled *The Adventure of Photography: 150 years of the photographic image* (*Id.* ¶ 4), *Escape From Sobibor* (*Id.* ¶ 7), and *The Truth About Jane* (*Id.*, ¶ 13), were seized from him.

Regarding each of the incidents in which items were seized from him or prohibited to him, Plaintiff asserts that Defendants Cal R. Ludeman, Dennis Benson, Nancy Johnston, and Greg Carlson were responsible for creating the policies permitting the violation of his constitutional rights.  (*Id.* ¶ 18.)  He further asserts that these Defendants directed their staff to confiscate the specific items seized and to place Plaintiff in isolation for his refusal to comply with the violation

---

(Footnote Continued from Previous Page)
15, 2000)

of his constitutional rights.  (*Id.*)

Plaintiff seeks the following remedies for these allegedly unconstitutional acts by Defendants.  He seeks a declaration that Defendants have violated his First, Fourth, Sixth, and Eighth Amendment rights under the United States Constitution.  (*Id.* ¶ V.A.)  He asks the Court to enter a preliminary and permanent injunction, enjoining the further violation of his First Amendment rights by Defendants and their subordinates.  (*Id.* ¶ V.B.)  He seeks a permanent injunction against Defendants and their subordinates prohibiting them from inflicting on him cruel and unusual punishment and from confiscating materials that are not pornographic.  (*Id.* ¶ V.C.)  Finally, he seeks a monetary award for compensatory and punitive damages in the amount of $250,000 (*Id.* ¶ V.D.), and any other relief deemed just and appropriate (*Id.* V.E.).

## DISCUSSION

## I.   STANDARD OF REVIEW

In lieu of answer, Defendants have brought a motion to dismiss the Complaint for failure to state a claim for which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).[2]  Their arguments for dismissal on the pleadings may be

---

[2]      Defendants refer to language from the Supreme Court's decision in *Twombly*, 127 S. Ct. 1955, 1964-65 (2007), that requires a plaintiff to "provide the grounds of his entitlement to relief" beyond mere labels and conclusions.  (Doc. No. 7, Mem. in Supp. of Defs.' Mot. to Dismiss 13.)  This district has recognized that the *Twombly* decision "retired" the statement in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), of the standard of review applied to a motion to dismiss for failure to state a claim.  *E.g.*, *Njaka v. Wright County*, 560 F. Supp. 2d 746, 752 (D.

(Footnote Continued on Following Page)

generalized into the following.  They assert that the sex offender treatment

program in Minnesota has a constitutionally valid, important policy of prohibiting

sexually dangerous persons in the program from having sexually explicit,

obscene, or pornographic media material, and no constitutional right of Plaintiff

could have been violated by the actions described in the Complaint.  Moreover,

they argue that the claims against various individual Defendants should be

dismissed either because (1) the Plaintiff has failed to specify their personal

involvement in the alleged violation of his constitutional rights or (2) they are all

immune from suit, as a matter of law, because of the doctrine of qualified

immunity, which protects state employees who have acted within the scope of

their official duties.  (*See* Doc. No. 7, Mem. in Supp. of Defs.' Mot. to Dismiss

("Defs.' Mem.").)

      Since this is a motion to dismiss under Rule 12(b)(6), we must take the

facts alleged in the Complaint as true, and must construe the pleadings in the

---

(Footnote Continued from Previous Page)
Minn. 2008) ("[In *Twombly*] the Court simply retired the 'no set of facts' phrasing as 'an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'") (quoting *Twombly*, 127 S. Ct. at 1969). But *Twombly* did nothing to alter the notice pleading requirements set forth in the Federal Rules of Civil Procedure, *Njaka*, 560 F. Supp. 2d at 752, nor did it change the fact that this Court must accept the allegations in a plaintiff's complaint as true and construe all reasonable inferences from the facts plead in the light most favorable to the plaintiff.  *See* 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level, . . . *on the assumption that all the allegations in the complaint are true* (even if doubtful in fact)[.]") (emphasis added).

5

light most favorable to the Plaintiff, the nonmoving party.  *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).  Complaints under § 1983 are governed by the "notice pleading" standard established by the Federal Rules of Civil Procedure. *See Erickson v. Pardus* , 127 S. Ct. 2197, 2200 (2007) (noting that a prisoner's complaint asserting Eighth Amendment medical treatment claim satisfied the notice pleading standard); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (noting that for a prisoner's Eighth Amendment deliberate indifference medical treatment claim to survive a motion to dismiss the plaintiff "is merely required to provide 'a short and plain statement'" of the claim); *Njaka v. Wright County*, 560 F. Supp. 2d 746, 751 (D. Minn. 2008) (applying the "liberal system of 'notice pleading' set up by the Federal Rules" to a complaint under § 1983).  Federal Rule of Civil Procedure 8(a) provides that the complaint must set forth "(1) a short and plain statement of the grounds on which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  Although Federal Rule of Civil Procedure 9 requires that certain issues be pled "with particularity" (e.g., fraud and mistake), it does not generally apply to § 1983 claims.

When ruling on the motion to dismiss now before us, "we must accept as true all of the factual allegations contained in the complaint."  *Erickson*, 127 S. Ct. at 2200.  Thus, and we emphasize that this is for the purposes of this motion

6

only,[3] we assume that: (1) the media materials described in the Complaint were confiscated from Plaintiff; (2) Plaintiff has a constitutionally protected right of access to each of these materials; (3) none of these materials qualified as the type of prohibited or counter-therapeutic material which may be banned pursuant to Minn. Stat. § 246B.04 and Minnesota Sex Offender Program procedures; (4) the materials were arbitrarily seized without any rational connection to therapeutic goals; and (5) Plaintiff was punished by being sent to "isolation" as part of the enforcement of these illegal practices.

## II.   PLAINTIFF'S FIRST, FOURTH, SIXTH, AND EIGHTH AMENDMENT CLAIMS

### A.   Plaintiff has stated a claim that his First Amendment rights were violated.

The primary thrust of Defendants' motion to dismiss is that there was no constitutional violation involved in the confiscation of the designated materials. Addressing the main constitutional issue—whether Plaintiff's First Amendment rights were violated—they argue that:  (1) obscene or pornographic material is not entitled to First Amendment protection; and (2) to the extent that the subject material is not obscene or pornographic but is sexually explicit, there is no First Amendment violation because the ban on the materials in issue was "reasonably related to penological interests" and satisfied the requirements of *Turner v.*

---

[3]   This Court offers no opinion regarding the ability of Plaintiff to pursue these claims at trial or to survive a motion for summary judgment after discovery has been conducted.

*Safley*, 482 U.S. 78 (1987).  (*See* Defs.' Mem. at 23-33.)

The problem with Defendants' theory is that it is disconnected from Plaintiff's Complaint.  Plaintiff does not contend that the Program cannot ban obscene, pornographic, or sexually explicit material, nor material which is properly deemed counter-therapeutic.  (Doc. No. 11, Pl.'s Objection to Defs.' Mot. to Dismiss ("Pl.'s Objection") at 2.)  Rather, he contends that none of the confiscated material falls into that class of material that may be lawfully seized. Plaintiff "is not challenging the constitutionality of Minn. Stat. 246B.04, Subd. 2, he is contending that the Minnesota Sex Offender Program's interpretation, and the implementation of the statute violates his constitutional rights."  (*Id.*)  That is why, for example, he says in his objection to the motion to dismiss that Oprah Winfrey "would be shocked to find out her books are considered 'pornography'" and that a confiscated film was an "anti-drug movie."  (*Id.*)  Given the limitations inherent in our review of a motion to dismiss, we must assume that Plaintiff's allegations are true, and that the materials described in the Complaint were, in fact, arbitrarily banned and there was no fair application of an otherwise constitutionally valid policy.

We do not lose sight of the fact that Plaintiff faces a very difficult burden going forward in this case.  The state must be afforded a great deal of discretion and flexibility in treating sexually dangerous patients in custody, and this means that the Court will show a great deal of deference to decisions to restrict patients

8

from engaging in behavior that detracts from treatment goals and implicates the

safety of the staff and other patients.  But we also recognize that patients do not

surrender all constitutional rights by their lawful detention in a treatment facility.

*See Turner v.* Safely, 482 U.S. 78, 89 (1987).  If we were to accept Defendants'

approach to the dismissal of cases such as this one, then it is hard to envision

any circumstance where an involuntarily committed patient could assert a

challenge to the violation of his constitutional rights when constitutionally

protected books, periodicals, pamphlets, or other media materials were censored

or confiscated.  All that the Defendants would have to do to obtain dismissal of

such claims would be to assert the general constitutionality of the institution's

policies without ever addressing their application in a particular case.

Since Defendants have not answered the Complaint, we do not even have

a denial of Plaintiff's contentions that the specific materials confiscated from him

fall into the class of speech protected by the First Amendment and that the

confiscation was arbitrary and punitive.  Defendants allude to the program

regulations prohibiting sexually explicit material, but we have no way of knowing

whether or how such regulations were applied in the decision to ban materials

such as a page from the *Nation* magazine, an issue of *Oprah* magazine, and

auction house photographic collection catalogs.  We are only left to guess that

there might have been some nudity or perhaps sexually explicit text in these

works, but such guesswork is not a sufficient basis for a 12(b)(6) dismissal of a

claim of constitutional violation.

**B.      Plaintiff has stated a claim for violation of his Fourth Amendment rights.**

Plaintiff has also stated a claim for which relief can be granted on the grounds that his Fourth Amendment rights were violated.  Defendants acknowledge that adjudication of Plaintiff's claim of unreasonable search and seizure of the media materials requires the Court to determine the reasonableness of the conduct of the Defendants in the context of the particular facts of this case by balancing "the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 560, 559 (1979).  As with his First Amendment claim, Plaintiff has a "heavy burden" to show that in seizing the subject materials the institution officials engaged in an "exaggerated . . . response to the perceived security concerns, and we must give wide-ranging deference to the institution's officials on matters of institutional security."  *Franklin v. Lockhart*, 883 F.2d 654, 657 (8th Cir. 1989).  Without more than the Complaint, however, we have no basis on which to make any such determination.  Plaintiff's allegation in the Complaint that prison officials reportedly confiscated protected materials from him should not be dismissed because he has alleged conduct by Defendants, which, if true, would entitle him to relief.

**C.     Plaintiff has failed to state a claim under the Sixth Amendment, but his Complaint should be construed to state a claim that Defendants violated his procedural due process rights.**

Defendants have moved to dismiss any claims Plaintiff has asserted under the Sixth Amendment because that amendment does not protect any rights raised by the factual allegations contained in the Complaint.  (*See* Defs.' Mem. 33-34.)  The Complaint asserts, in various paragraphs, that certain actions involving the seizure of his possessions violates his "6th Amendment right to Due Process."  (Doc. No. 1, ¶¶ 5, 9-10, 13, 15-17.)

The Sixth Amendment provides that a criminal defendant shall have the right to a speedy, public trial by an impartial jury; to be informed of the nature of the accusations against him; to confront witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have assistance of counsel for his defense.  U.S. Const. Amend. VI.  Because none of the allegations in the Complaint relate to any "criminal prosecutions," this Court recommends that Defendants' motion to dismiss be granted only to the extent it seeks to dismiss any claim that liability be imposed based on an alleged violation of the Sixth Amendment.

However, in the paragraphs in which the Complaint refers to the Sixth Amendment, Plaintiff made clear that he was alleging violations of his "right to Due Process[.]"  (Doc. No. 1, ¶¶ 5, 9-10, 13, 15-17.)  While the Sixth Amendment does not contain a clause including the "Due Process" language, it is plain that

Plaintiff merely made a mistake in referring to that particular Amendment.  This

Court construes *pro se* complaints liberally, *Roller v. U.S.*, Civil No. 07-1296

(JRT/FLN), 2008 WL 835677, at *2 (D. Minn. Mar. 27, 2008) (citing *Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972)), and no great effort need be made in this case

to see that Defendants have been put on notice by the Complaint that Plaintiff

has asserted that the seizures alleged therein violated his procedural Due

Process rights under the Fourteenth Amendment.[4]

    In most of the allegations concerning Plaintiff's reference to his due

process rights, Plaintiff asserts that items were seized from him and no

disposition regarding the seizure of his property was provided.  (*See* Doc. No. 1,

¶¶ 5, 9-10, 17.)  In the other allegations, Plaintiff has alleged that while he was

placed in "protective isolation," officials searched his cell and seized various

---

[4]     For a procedural due process claim to succeed a plaintiff must show that
he has been "deprived of a protected liberty or property interest" arising from the
Due Process Clause or the laws of the State.  *Senty-Haugen v. Goodno*, 462
F.3d 876, 886 (8th Cir. 2006).  If plaintiffs do "have a protected interest, we then
consider what process is due by balancing the specific interest that was affected,
the likelihood that the Offender Program procedures would result in an erroneous
deprivation, and the Offender Program interest in providing the process that it
did, including the administrative costs and burdens of providing additional
process."  *Id.*  (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976)).  The
"most important mechanisms for ensuring due process  are notice of factual
basis leading to deprivation and fair opportunity for rebuttal."  *Bradford v.*
*Whitworth*, No. 06-3095, 242 Fed. App'x. 369, 2007 WL 2694314 at *1 (8th Cir.
Sep.17, 2007) (citing *Senty-Haugen*, 462 F.3d at 886).  "A procedural due
process claim focuses not on the merits of a deprivation, but on whether the
State circumscribed the deprivation with constitutionally adequate procedures."
*Senty-Haugen*, 462 F.3d at 886 (citing *Parrish v. Mallinger*, 133 F.3d 612, 615
(8th Cir. 1998)).

items from him.  (*Id.* ¶¶ 15-16.)  In this Court's view, these allegations state a

claim that the procedures used in taking Plaintiff's property were constitutionally

inadequate, and therefore deprived Plaintiff of his procedural due process rights.

*See Njaka v. Wright County*, 560 F. Supp. 2d 746, 752 (D. Minn. 2008) ("[A]

Plaintiff is not required to plead the correct legal theory, or indeed any legal

theory at all, just a short and plain statement of the facts, and the Court must

deny a Rule 12(b)(6) motion if it determines the Plaintiff could recover under 'any

possible legal theory' consistent with those facts.") (quoting 5B Wright & Miller,

*Federal Practice and Procedure* § 1357, at 676 (3d ed. 2004).  Thus, this Court

recommends that Plaintiff's reference to violations of his right to due process and

the corresponding factual allegations be construed to claim that his procedural

due process rights were violated.  Because Defendants have failed to challenge

such claims, the procedural due process claims raised by the Complaint should

be permitted to go forward.

   **D.   Plaintiff has failed to state a claim under the Eighth
   Amendment, but his Complaint should be construed to state a claim
   under the Due Process Clause.**

   Plaintiff claims that Defendants' decisions to place him in isolation violated

his Eighth amendment right to be free from cruel and unusual punishment.

However, Plaintiff has been civilly committed to the Moose Lake program center

for treatment purposes, and is not incarcerated as a result of a conviction.  In this

Circuit, "because an involuntarily committed psychiatric patient is confined for

13

treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels v. Vincenzi*, 382 F.3d 870, 874 (8th Cir. 2004).  Thus, Defendants are technically correct that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.  However, for the reasons that follow, this Court recommends that Defendants' motion be denied in this respect as well.

Nevertheless, a civilly committed patient is not without recourse for mistreatment by institutional officials charged with overseeing his confinement. "[C]hallenge[s] to the conditions of a civilly committed patient are analyzed under the Due Process Clause." *See Holly v. Anderson*, No. 04-CV-1489 (JRT/FLN), 2008 WL 1773093, at *5 (D. Minn. Apr. 15, 2008) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315-17 (1982)).  Such a claim depends in the first instance upon whether officials acted with an intent to punish the patient.  *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979).  If the court finds that the officials did not act with intent to punish, then it must determine whether the restrictions constitute punishment by analyzing whether the restrictions are rationally related to legitimate governmental purposes and whether the restrictions are excessive.  *Id.*

Here, Plaintiff has alleged that he was placed in isolation for a period of at least one week in retaliation for his refusal to agree to the seizure of a t-shirt in his possession.  Construing the facts alleged in the light most favorable to Plaintiff, this Court construes the Complaint to state a claim that Defendants

14

violated his Due Process rights when they intended to punish him by directing

that he be placed in isolation for exercise of his right of free speech.  *See Njaka*,

560 F. Supp. 2d at 752 (noting that a plaintiff is not required to plead the correct

legal theory to defeat a motion to dismiss).  Because Defendants have not

moved to dismiss a claim that Defendants' violated Plaintiff's substantive due

process rights when they placed him in isolation, this Court recommends that

such a claim be permitted to go forward.

## III.    SUPERVISOR LIABILITY CLAIMS STATED AGAINST DEFENDANTS LUDEMAN, BENSON, JOHNSTON, AND CARLSON

Defendants Ludeman, Benson, Johnston, and Carlson assert that even if

the Complaint states a claim of constitutional violation for which relief may be

granted, it fails to allege that these Defendants personally participated in any acts

that gave rise to the alleged constitutional violations.  Defendants contend that

each of these Defendants serves in a supervisory capacity in the Minnesota Sex

Offender Program, and there is no vicarious liability for actions under § 1983.

(*See* Defs.' Reply Mem. at 3 (citing *Beard v. Lockhart*, 716 F.2d 544, 545 (8th

Cir. 1983)).)

The claims against these Defendants are best characterized as ones

based on the doctrine of "supervisory liability."  This is a doctrine of narrow

application:

> In section 1983 actions supervisory liability is limited.  . . .  A
> supervisor cannot be held liable for an employee's unconstitutional
> actions based on a theory of respondeat superior.  . . .  Rather, a
> supervisor incurs liability for a violation of a federally protected right

15

when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. . . . The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see.

*Ottman v. City of Independence, MO.*, 341 F.3d 751 (8th Cir. 2003).

The Complaint, in paragraph 18, sets forth the claim against these

Defendants as follows:

Defendants Cal R. Ludeman, Dennis Benson, Nancy Johnston, Greg Carlson are responsible for creating the policies that infringe on plaintiffs freedom of speech, access to the media, and censoring all materials that they deem "inappropriate" by their own standards, in violation of plaintiffs Constitutional Rights. *The defendants are also responsible for giving their staff the direction to confiscate media items from plaintiff, and to put him in "protective isolation" until he complied with these violations of his Constitutional Rights.*

(Emphasis added.)

Thus, the Complaint claims that these supervisors knew about and

facilitated their subordinates' violations of Plaintiff's constitutional rights

because they directed the subordinates to apply the policy prohibiting

possession of certain materials in an unlawful way. *Cf. Valiant-Bey v.*

*Morris*, 829 F.2d 1441, 1444 (8th Cir. 1987) (reversing a district court order

dismissing the portion of a prisoner's complaint alleging that prison officials

wrongly confiscated a memorandum containing protected information that

was delivered to the prisoner). Given the fact that we must, in considering

a Rule 12(b)(6) motion to dismiss for failure to state a claim, take the facts

alleged in the Complaint as true, and we must construe the pleadings in

16

the light most favorable to Plaintiff, we conclude that Plaintiff has met the

pleading requirements to survive the motion to dismiss Plaintiff's

supervisor liability claims against these supervisor Defendants.

## IV.    CLAIMS STATED AGAINST DEFENDANTS NINNEMAN, LUNDQUIST, AND ECKLUND

Plaintiff's Complaint also alleges that Defendants Ninneman, Lundquist,

and Ecklund are all state employees who work in the Minnesota Sex Offender

Program at Moose Lake where Plaintiff is being treated.  The Complaint alleges

some direct involvement by each of them in the conduct that Plaintiff alleges

violated his constitutional rights.  Specifically, the Complaint alleges that

Defendant Lundquist deemed a DVD regarding photographic history "prohibited"

in violation of Plaintiff's constitutional rights.  (Doc. No. 1, ¶ 4.)  Plaintiff alleges

that Defendant Lundquist also made a similar decision regarding a Christie's

auction house catalog due to nudity.  (*Id.* ¶ 6.)  As to Defendant Ninneman,

Plaintiff alleges that he was involved in the seizure of a t-shirt belonging to

Plaintiff on two separate occasions.  (*Id.* ¶¶ 5, 15.)  And, regarding Defendant

Ecklund, Plaintiff alleges that she was involved in the decision to censor his

possession of two Christie's auction house catalogs (*Id.* ¶ 8), his possession of a

magazine entitled *Pacific Island Ladies* (*Id.* ¶ 12), and the seizure of and

punishment for possession of a t-shirt bearing a slogan promoting an anti-drug

film (*Id.* ¶ 15).

These Defendants argue, however, that the Complaint does not

specifically allege that they were each involved in all of the acts which violated Plaintiff's rights.  These Defendants thus contend that the Plaintiff should not be able to seek monetary damages against them for those specific violations of Plaintiff's constitutional rights in which they had no personal involvement.

The Defendants appear to misread the Complaint.  The Complaint does not seek monetary damages from these individual Defendants for constitutional violations in which they were not involved.  It sets forth, in 17 separate paragraphs, the various specific acts which Plaintiff contends violate his constitutional rights.  It does not, in those separate paragraphs, conclude separate damages claims for each violation.  Rather, in the *ad damnum* clause, the Plaintiff sets forth a general claim for "compensatory and punitive damages in the amount of $250,000[.]"  (Doc. No. 1, ¶ V.D.)  It is not necessary for the Plaintiff to plead damages in the Complaint with the specificity sought by these Defendants.  Of course, as the case proceeds, Plaintiff will have to meet rigorous requirements in specifying his damages claims and in sustaining the burden of proof for such claims.

## V.  QUALIFIED IMMUNITY

All of the Defendants argue that even if this Court finds that Plaintiff states a claim of constitutional violation for which relief can be granted, Defendants are entitled to qualified immunity from any award of damages and, thus, the Complaint should be dismissed.  The doctrine of qualified immunity protects

government officials from suit for constitutional violations unless their conduct

violates the "clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Seigert v. Gilley*, 500 U.S. 226 (1991).

Qualified immunity thus "gives ample room for mistake in judgments by

protecting all but the plainly incompetent or those who knowingly violate the law."

*Hunter v. Bryant*, 502 U.S. 224 (1991).

Deciding a motion to dismiss on qualified immunity grounds puts the court

in the difficult position of deciding an important constitutional question on a non-

existent factual record.  As the Ninth Circuit noted:

> We note, again, the special difficulty of deciding the motion to
> dismiss a Defendant on qualified immunity grounds at this state.
> Under the notice pleading standard of the Federal Rules, plaintiffs
> are only required to give a short and plain statement of their claims.
> . . . Thus, when reviewing the sufficiency of a complaint before
> receiving any evidence, [a federal court's] task is a limited one.  The
> issue is not whether a plaintiff will ultimately prevail but whether the
> claimant is entitled to offer evidence to support the claims.

*Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (internal quotations and

citations omitted).

In order for this Court to grant a 12(b)(6) motion to dismiss on qualified

immunity grounds, we would have to conclude that the Complaint, on its face,

shows that the Defendants are entitled to qualified immunity as a matter of law.

The Defendants urge us to reach this conclusion because (1) Plaintiff failed to

allege a sufficient factual basis to establish that the Defendants personally acted

in violation of his constitutional rights; and (2) even if this Court were to find that

Defendants' conduct violated Plaintiff's constitutional rights, any such constitutional right is not "clearly established."

Turning to the first of these arguments, we have already concluded, as noted above, that the Complaint states various claims for relief against the individual Defendants which survive a Rule 12(b)(6) dismissal motion.  Even if this were not the case, however, Defendants' qualified-immunity argument for dismissal makes no logical sense.  It is premised on the assumption that "even if this Court finds that Plaintiff states a claim," Defendants are nevertheless entitled to qualified immunity from any award of damages.  (Defs.' Mem. at 34.)  But if the Plaintiff has in fact stated a claim for which relief can be granted, he has of course necessarily alleged a sufficient factual basis to establish that the Defendants personally acted in violation of his constitutional rights.

Defendants' second argument—that the constitutional rights asserted by Plaintiff are not clearly established—does raise a logical qualified immunity defense.  Defendants argue that, as a general matter, the institution treating sexually dangerous persons may prohibit patients from having access to a wide range of sexually explicit or counter-therapeutic material without running afoul of a patient's constitutional rights.  As noted above, this may be true, but it does not address the issue in this case—whether the application of the media polizy violated Plaintiff's constitutional rights.  Of course, after Defendants answer and discovery explains whether and how the media policy was applied in this case, it

20

may turn out that the classification of Plaintiff's media materials as prohibited items did not violate any clearly established constitutional right of Plaintiff.  But this is best adjudicated on a properly filed motion for summary judgment, or at trial if no such motion is brought, when the Court will have the benefit of a record, including sworn evidence, not just the bare Complaint.  *Cf. Beaulieu v. Ludeman*, No. 07-CV-1535 (JMR/JSM), 2008 WL 2498241, at *27-28 (D. Minn. June, 18, 2008) (rejecting qualified immunity defense on a motion to dismiss because the court could not "make a determination that qualified immunity applie[d] or [did] not apply on the face of the Complaint").

This Court recognizes that officials in the position of these Defendants are legitimately concerned about the possibility that civil rights actions may be used to harass them and to interfere with their ability to carry out their official duties. This is, of course, why the Supreme Court has held that qualified "[i]mmunity *ordinarily* should be decided by the court long before trial."  *Hunter v. Bryant*, 502 U.S. 224, 228 (1981) (emphasis added).  Some of these concerns can be ameliorated by structuring and limiting discovery.  *See* Fed. R. Civ. P. 26(b)(2)(A) (permittin a court to place appropriate limitations on depositions, interrogatories, and requests for admissions); Fed. R. Civ. P. 26(b)(2)(C) (permitting a court, on a motion or on its own, to limit the frequency or extent of discovery otherwise permitted by the Rules).  Further, a pretrial scheduling order in this case will be carefully crafted to meet these goals.

## VI.   DEFENDANT'S ELEVENTH AMENDMENT ARGUMENT

Defendants also argue that Plaintiff's claims for monetary damages against Defendants in their official capacities are "fatally flawed because the State has not waived its Eleventh Amendment immunity concerning the actions taken by Defendants in their official capacities."  (Doc. No. 7 at 13.)  Lawsuits against state officials in their official capacities are not suits against such officials, but rather suits against the officials' offices—thus they are no different than a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "A suit by a private party seeking to recover damages to be paid by the state is barred by the Eleventh Amendment absent the state's consent to the suit."  *Holly v. Anderson*, No. 04-CV-1489 (JRT/FLN), 2008 WL 1773093, at *4 (D. Minn. Apr. 15, 2008) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).

While Defendants are correct that Plaintiff may not recover damages against Defendants in their official capacities, his request for relief of monetary damages can easily be construed to address only the liability Defendants incurred in the individual capacities.  The Complaint also asserts claims for injunctive and declaratory relief that would not be barred as official-capacity claims.  Therefore, this Court recommends that Defendants motion be denied as moot to the extent it seeks dismissal of any official-capacity claims for damages based on the Eleventh Amendment.

## RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Defendants' Motion to Dismiss (Doc. No. 5) be **DENIED**


Dated:  March 11, 2009

 _s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
March 31, 2009, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.